UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JPMORGAN CHASE BANK, N.A.,

       Plaintiff,

                                               Case No. 1:12-cv-352
                                               Hon. Hugh W. Brenneman, Jr.

v.

THE CHELSIE CORPORATION, *et al.*,

       Defendants.

                                       /

## OPINION

Plaintiff, JPMorgan Chase Bank, N.A. ("Chase") filed the present action against defendants for damages and other relief arising from defendants' default of a loan. This matter is now before the court on Chase's motion for summary judgment (docket no. 24). Defendants did not oppose the motion.

      **I.**      **The complaint**

      **A.**      **Plaintiff's allegations**

Chase set forth the following allegations in its complaint. Chase is the successor by merger to Bank One, N.A. (formerly known as NBD Bank), with its registered office in Columbus, Ohio. Compl. at ¶ 1. Defendant The Chelsie Corporation (sometimes referred to as "Chelsie Corporation" or the "Borrower") is a Michigan corporation with its registered office in St. Joseph County, Michigan. *Id.* at ¶ 2. Defendant K. Hardin (sometimes referred to as "Kent Hardin") resides in St. Joseph County, Michigan. *Id.* at ¶ 3. Defendant J. Hardin (sometimes referred to as "Juli Hardin") resides in Cook County, Illinois. *Id.* at ¶ 4. Defendants K. Hardin and J. Hardin are

sometimes referred to collectively as the "Guarantors." *Id.* at p. 1. The amount in controversy exceeds $75,000.00 and this court has diversity jurisdiction under 28 U.S.C. § 1332(a).

On December 19, 1997, Chase's predecessor and Chelsie Corporation entered into Credit Authorization Agreement relating to a possible loan (the "Agreement"). Compl. at ¶ 6; Credit Authorization Agreement (docket no. 1-2). Pursuant to the terms of the Agreement, Chelsie Corporation executed and delivered to Chase a Master Demand Business Loan Note dated December 19, 1997 in the amount of $200,000 (the "Contract"). Compl. at ¶ 7; Contract (docket no. 1-3). According to the terms of the Contract, Chelsie Corporation agreed it would repay the loan on demand, and that until demand was made it would pay consecutive monthly payments of interest only beginning in January 1998. Compl. at ¶¶ 7-8.

The Guarantors executed and delivered to Chase's predecessor the following: a Continuing Guaranty dated December 19, 1997 (the "1997 Guaranty"); a Continuing Guaranty dated September 15, 1999 (the "1999 Guaranty"); and, a Continuing Guaranty dated September 13, 2001 (the "2001 Guaranty") . Compl. at ¶¶ 9-14; 1997 Guaranty (docket no. 1-4); 1999 Guaranty (docket no. 1-5); and 2001 Guaranty (docket no. 2-1). Under the terms of the 1997 Guaranty, 1999 Guaranty, and 2001 Guaranty (collectively referred to as the "three Guaranties"), the Guarantors unconditionally guaranteed the full payment and performance of all present and future obligations owed by the Borrower to Chase. *Id.*[1]

As additional security for its obligation under the Contract, Chelsie Corporation executed a Continuing Security Agreement dated December 19, 1997 (the "Security Agreement"),

---

[1] The court notes that the allegations as set forth in the complaint are not consistent with the documents attached to the complaint, which reflect that Julie Hardin did not sign the 2001 Continuing Guaranty. *See* Continuing Guaranty (docket no. 2-1).

which granted Chase's predecessor a security interest in its accounts receivable, inventory and equipment, collectively referred to as the "Collateral." Compl. at ¶ 15; Security Agreement (docket no. 2-2). The collateral is described as follows:

> The Collateral covered by this agreement is all of the Debtor's [Chelsie Corporation's] property indicated above and defined below, present and future, including but not limited to any items listed on any schedule or list attached. Also included are all proceeds, including but not limited to stock rights, subscription rights, dividends, stock dividends, stock splits, or liquidating dividends, and all cash accounts, chattel paper and general intangibles arising from the sale, rent, lease, casualty loss or other dispositions of the Collateral, and any Collateral returned to, repossessed by or stopped in transit by the Debtor. Also included are the Debtor's books and records which relate to the Collateral. Where the Collateral is in the possession of the Bank, the Debtor agrees to deliver to the Bank any property which represents an increase in the Collateral or profits or proceeds of the Collateral.

Security Agreement (docket no. 2-2). The "inventory" and "equipment" referred to in the Security Agreement, are located at "2943 Division Street, St. Joseph, MI 49085." *Id.* While Chase has alleged in its complaint that the collateral included "contract rights," the court notes that these rights, referred to as "specific" collateral listed in Item 6 of the Security Agreement, are not checked off and identified as collateral on the Security Agreement itself. *See* Compl. at ¶ 15; Security Agreement (under section labeled "Collateral") (docket no. 2-2).

The Agreement, the Contract, the three Guaranties, and the Security Agreement are collectively referred to as the "Loan Documents." Chase's security interest in the Collateral was perfected by filing UCC-1 financing statements with the Michigan Secretary of State. Compl. at ¶ 16. Chelsie Corporation defaulted under the terms of the Loan Documents by failing to pay the Contract as agreed. *Id.* at ¶ 17. In addition, the Guarantors defaulted under the terms of the Loan Documents by failing to pay the three Guaranties as agreed. *Id.* at ¶ 18. On February 17, 2012, Chase provided Chelsie Corporation and Kent Hardin with notice of the defaults and the acceleration

of the sums under the Loan Documents (the "Notice of Default"). *Id.* at ¶ 19; Notice of Default (docket no. 2-3).

### B. Plaintiff's claims for relief

In Count I, Chase claims that Chelsie Corporation and the Guarantors have defaulted under the Loan Documents because they failed to pay the amounts due and owing to Chase under the Contract and the three Guaranties. Compl. at ¶¶ 20-22. Chase seeks a judgment against Chelsie Corporation and the Guarantors, jointly and severally, in an amount at least equal to $204,739.77, plus additional interest, late fees, costs, attorneys' fees and legal expenses.

In Count II, Chase claims that under the terms of the Security Agreement, after a default has occurred, Chase may: (a) take possession of the Collateral; (b) enter upon any premises where the Collateral might be situated to remove it; and (c) sell or dispose of the Collateral with the proceeds applied to the indebtedness due under the Loan Documents. *Id.* at ¶¶ 23-24. Chase believes that the value of the Collateral, which consists of both independent pieces of property and divisible property of uniform kind, quality and value, is less than the amount due and owing by Chelsie Corporation pursuant to the terms of the loan documents. *Id.* at ¶¶ 25-26. Chase alleges that it is entitled to immediate possession of the Collateral, which Chelsie Corporation retains possession of and is unlawfully detaining from Chase and its agents. *Id.* at ¶¶ 27-28. Chase also seeks a judgment against Chelsie Corporation with entry of an order directing the United States Marshals or law enforcement officers to: (a) seize and repossess the Collateral; (b) allow the United States Marshal to sell the Collateral pursuant to the terms of the Security Agreement; and (c) turn over to Chase the proceeds of such sale, less statutory costs and fees.

## II. Legal Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Rule 56 further provides that "[a] party asserting that a fact cannot be or is genuinely disputed must support the assertion by":

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the parties' burden of proof in deciding a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case. Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland*, 57 F.3d at 478-79 (citations omitted). "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party." *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).

Here, Chase's motion is unopposed. "The fact that there has been no response to a summary judgment motion does not, of course, mean that the motion is to be granted automatically." *Champion v. Artuz*, 76 F.3d 483, 486 (2nd Cir. 1996). The trial court is required to "intelligently

and carefully review the legitimacy of such unresponded-to motion" and cannot "blithely accept the conclusions argued in the motion." *Guarino v. Brookfield Township Trustees*, 980 F.2d 399, 407 (6th Cir. 1992). However, when a motion for summary judgment is unopposed, "[n]othing in either the Rules or case law supports an argument that the trial court must conduct its own probing investigation of the record" to demonstrate the existence of genuine issues of material fact. *Id.* at 405.

### III. Factual record

#### A. Defendants' residences

As an initial matter, Chase's allegations regarding the defendants' residences are contradicted by evidence in the court record which reflects that Chelsie Corporation's office is located in the City of St. Joseph, Berrien County, Michigan rather than in St. Joseph County, Michigan (Credit Authorization Agreement (docket no. 1-2), as alleged by plaintiff, Interrogatory Response no. 1 (docket no. 24-2)). In his answer, defendant Kent Hardin denied Chase's allegation that he resides in St. Joseph County, Michigan, stating that he resides in Berrien County, Michigan. Answer at ¶ 3 (docket no. 8). Similarly, in her answer to the complaint, defendant Juli Hardin denied Chase's allegation that she resides in Cook County, Illinois, stating that she resides in Berrien County, Michigan. Answer at ¶ 4. Based on this record, factual issues exist with respect to: the Michigan County in which Chelsie Corporation is located;[2] the Michigan County in which Kent Hardin resides; and whether Juli Hardin resides in Cook County, Illinois or Berrien County, Michigan. However, these factual issues do not affect the merits of Chase's motion for summary judgment. To the extent that there is a factual issue with respect to the location of Chelsie

---

[2] Both Michigan counties are in the Western District of Michigan.

Corporation's office, and the Hardins' residences, this dispute does not affect the court's jurisdiction of this matter. Plaintiff is a resident of Ohio. Whether defendants reside in Michigan or Illinois, the court retains diversity jurisdiction pursuant to 28 U.S.C. § 1332(a).

> **B.** **Judicial admissions**

Chase's motion for summary judgment is based in large part on judicial admissions made by defendants. The effect of judicial admissions made during the course of litigation cannot be understated. "A party's assertion of fact in a pleading is a judicial admission by which it normally is bound throughout the course of the proceeding." *Bellefonte Re Insurance Company v. Argonaut Insurance Company*, 757 F.2d 523, 528-29 (2d Cir. 1985).

> Judicial admissions are formal concessions in the pleadings, or stipulations by a party or its counsel, that are binding upon the party making them. They may not be controverted at trial or on appeal. Indeed, they are "not evidence at all but rather have the effect of withdrawing a fact from contention." Michael H. Graham, *Federal Practice and Procedure: Evidence* § 6726 (Interim Edition); see also John William Strong, *McCormick on Evidence* § 254, at 142 (1992). A judicial admission is conclusive, unless the court allows it to be withdrawn; ordinary evidentiary admissions, in contrast, may be controverted or explained by the party. *Id.*

*Keller v. United States*, 58 F.3d 1194, 1199 at n. 8 (7th Cir. 1995). As the Sixth Circuit explained in *Ferguson v. Neighborhood Housing Services of Cleveland, Inc.*, 780 F.2d 549 (6th Cir. 1986):

> Judicial admissions "eliminate the need for evidence on the subject matter of the admission," as admitted facts are no longer at issue. *Seven-Up Bottling Co. v. Seven-Up Co.*, 420 F.Supp. 1246, 1251 (E.D.Mo.1976), *aff'd*, 561 F.2d 1275 (8th Cir.1977). Once made, the subject matter of the admission should not be reopened in the absence of a showing of exceptional circumstances. *New Amsterdam Casualty Co. v. Waller*, 323 F.2d 20, 24 (4th Cir.1963), *cert. denied*, 376 U.S. 963, 84 S.Ct. 1124, 11 L.Ed.2d 981 (1964). This court has observed that "[u]nder federal law, stipulations and admissions in the pleadings are generally binding on the parties and the Court." *Brown v. Tennessee Gas Pipeline Co.*, 623 F.2d 450, 454 (6th Cir.1980) (citations omitted). Not only are such admissions and stipulations binding before the trial court, but they are binding on appeal as well. *See, e.g., Glick v. White Motor Co.*, 458 F.2d 1287, 1291 (3d Cir.1972).

*Ferguson*, 780 F.2d at 550-51. Thus, it has been said that "[a] judicial admission trumps evidence," giving rise to the principle that "a plaintiff can plead himself out of court." *Murrey v. United States*, 73 F.3d 1448, 1455 (7th Cir. 1996).

### 1. Defendants' admission of facts in the complaint

On May 22, 2012, Chelsie Corporation, Kent Hardin and Juli Hardin jointly filed an answer, in which they stated "no contest" to most of Chase's allegations regarding the execution of the Loan Documents. *See* Answer at ¶¶ 6-15. The specific allegations are as follows:

> 6. On December 19, 1997, the Borrower executed and delivered to Chase's predecessor a Credit Authorization Agreement relating to a possible $200,000 loan that would be granted if certain conditions were met (the "Agreement"). A copy of the Agreement is attached as Exhibit A.
>
> 7. On December 19, 1997, pursuant to the terms of the Agreement, the Borrower executed and delivered to Chase's predecessor a Master Demand Business Loan Note evidencing a loan in the principal amount of $200,000 (the "Contract"). A copy of the Contract is attached as Exhibit B.
>
> 8. Under the terms of the Contract, the Borrower agreed to pay Chase's predecessor, until demand, regular monthly payments of interest only beginning in January 1998.
>
> 9. The Guarantors executed and delivered to Chase's predecessor a Continuing Guaranty dated December 19, 1997 (the "1997 Guaranty"). A copy of the 1997 Guaranty is attached as Exhibit C.
>
> 10. Under the terms of the 1997 Guaranty, the Guarantors absolutely and unconditionally guaranteed the full payment and performance of all present and future obligations owed by the Borrower to Chase.
>
> 11. The Guarantors executed and delivered to Chase's predecessor a Continuing Guaranty dated September 15, 1999 (the "1999 Guaranty"). A copy of the 1999 Guaranty is attached as Exhibit D.
>
> 12. Under the terms of the 1999 Guaranty, the Guarantors absolutely and unconditionally guaranteed the full payment and performance of all present and future obligations owed by the Borrower to Chase.

13. K. Hardin executed and delivered to Chase's predecessor a Continuing Guaranty dated September 13, 2001 (the "2001 Guaranty," together with the 1997 Guaranty and the 1999 Guaranty are collectively referred to as the "Guaranties"). A copy of the 2001 Guaranty is attached as Exhibit E.

14. Under the terms of the 2001 Guaranty, K. Hardin absolutely and unconditionally guaranteed the full payment and performance of all present and future obligations owed by the Borrower to Chase.

15. To secure the indebtedness under the Contract, the Borrower executed a Continuing Security Agreement dated December 19, 1997 (the "Security Agreement," together with the Agreement, the Contract and the Guaranties are collectively referred to as the "Loan Documents"), which granted Chase's predecessor a security interest in all of the Borrower's accounts receivable, chattel paper, general intangibles, inventory, equipment and contract rights (the "Collateral"). A copy of the Security Agreement is attached as Exhibit F.

Compl. at ¶¶ 6-15 (emphasis omitted).

The Federal Rules of Civil Procedure do not provide for a defendant to respond to an allegation in a complaint by answering "no contest". Rather, Fed. R. Civ. P. 8(b)(1)(B) provides that "In responding to a pleading, a party must: . . . (B) admit or deny the allegations asserted against it by an opposing party." Fed. R. Civ. P. 8(b)(6) further provides that "An allegation – other than one relating to the amount of damages – is admitted if a responsive pleading is required and the allegation is not denied." [3] Accordingly, the court deems these allegations made in ¶¶ 6-15 of the complaint, which defendants did not deny, as admitted.

---

[3] The court notes that under Michigan law, a defendant may respond to a civil complaint by pleading "no contest." *See* MCR 2.111(C) ("Form of responsive pleading") ("As to each allegation on which the adverse party relies, a responsive pleading must (1) state an explicit admission or denial; (2) plead no contest; or (3) state that the pleader lacks knowledge or information sufficient to form a belief as to the truth of an allegation, which has the effect of a denial."); MCR 2.111(E) ("Effect of failure to deny") ((1) Allegations in a pleading that requires a responsive pleading, other than allegations of the amount of damage or the nature of the relief demanded, are admitted if not denied in the responsive pleading. (2) Allegations in a pleading that does not require a responsive pleading are taken as denied. (3) A pleading of no contest, provided for in subrule (C)(2), permits the action to proceed without proof of the claim or part of the claim to which the pleading is directed. Pleading no contest has the effect of an admission only for purposes of the pending action."). However, Michigan rules of pleading do not apply to this federal action.

### 2. Defendants' responses to Chase's requests for admissions

In support of its motion, Chase has submitted a document entitled "Defendant's [sic] Answers to plaintiff's interrogatories and requests for production of documents" (docket no. 24-2). This document also includes 19 requests for admission. *Id.* These admissions were signed by defendants' counsel and are deemed admitted under Fed. R. Civ. P. 36(b), which provides that "[a] matter admitted under this rule is conclusively established unless the court, on motion, permits the admission to be withdrawn or amended." "[T]he rule is well established, as it should be, that when admissions pursuant to Rule 36 constitute matters which are dispositive of a case, summary judgment in favor of the party who obtained the admissions is appropriate." *Equal Employment Opportunity Commission v. Baby Products Co., Inc.*, 89 F.R.D. 129, 131 (E.D. Mich. 1981). *See also*, *Rudder v. Rashid*, 68 F. Supp. 2d 815, 817 (E.D. Mich. 1999) (quoting *Baby Products Co.*); Fed. R. Civ. P. 56(c)(1) ("Supporting Factual Positions. A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), *admissions*, interrogatory answers, or other materials[.]) (emphasis added).

Chase relies on defendants' admissions to establish a number of facts: that payment of the sums due under the note has not been made by Chelsie Corporation, Kent Hardin or Juli Hardin "as agreed under the Loan Documents" (Request at ¶ 6); that "Chelsie Corporation is in default because of payment of the sums due under the Contract has not been made as agreed under the Loan Documents" (Request at ¶ 7); that "a written demand for payment of the sums due under the Contract was made on Chelsie Corporation and K. Hardin on or about February 17, 2012"

10

(Request at ¶ 3); that Chelsie Corporation and K. Hardin "received the Notice of Defaults (Request at ¶¶ 4-5); "that payment of the sums due under the Contract has not been made by Defendants as agreed under the Loan Documents" (Request at ¶ 6); "that Chelsie Corporation is in default because payment of the sums due under the Contract has not been made as agreed under the Loan Documents" (Request at ¶ 7); that "K. Hardin is in default under the 1997 Guaranty because he has not cured the default of Chelsie Corporation under the Loan Documents" (Request at ¶ 8); that "J. Hardin is in default under the 1997 Guaranty because she has not cured the default of Chelsie Corporation under the Loan Documents" (Request at ¶ 9); that "K. Hardin is in default under the 1999 Guaranty because he has not cured the default of Chelsie Corporation under the Loan Documents" (Request at ¶ 10); that "J. Hardin is in default under the 1999 Guaranty because she has not cured the default of Chelsie Corporation under the Loan Documents" (Request at ¶ 11); and that "K. Hardin is in default under the 2001 Guaranty because he has not cured the default of Chelsie Corporation under the Loan Documents" (Request at ¶ 11).

Defendants, however, have denied: "that Chelsie Corporation owes Chase, pursuant to the terms of the Loan documents, attorneys' fees and legal expenses incurred by Chase in enforcing the obligations owed under the Loan Documents" (Request at ¶ 13); "that K. Hardin owes Chase, pursuant to the terms of the Loan documents, attorneys' fees and legal expenses incurred by Chase in enforcing the obligations owed under the Loan Documents" (Request at ¶ 14); "that J. Hardin owes Chase, pursuant to the terms of the Loan documents, attorneys' fees and legal expenses incurred by Chase in enforcing the obligations owed under the Loan Documents" (Request at ¶ 15); "that the Defendants owe Chase pursuant to the terms of the Loan Documents at least the amount of $204,739.77" (Request at ¶ 16); and, "that the amount listed is due and owing from the

Defendants to Chase in the Complaint is true and accurate" (Request at ¶ 19). Finally, defendants neither admit nor deny "that Chase has a perfected security interest in the Collateral" (Request at ¶ 18).

### C. Bullock Affidavit

Esther Bullock, an Assistant Vice President of Chase, executed an affidavit which stated in pertinent part as follows. Chase is the successor by merger of NBD Bank. Bullock Aff. at ¶ 1 (docket no. 24-4). In her capacity as Assistant Vice President, Ms. Bullock had access to Chase's business records maintained in the ordinary course of regularly conducted business activity, including the business records for and relating to the Chelsie Corporation loan. *Id.* at ¶¶ 1-2. Ms. Bullock prepared this affidavit based upon her review of the records relating to Chelsie Corporation's loan and from her own personal knowledge of how such records are kept and maintained. *Id.* at ¶ 2. Based on her review of the Loan Documents, the transaction history and a printed version of the relevant "view ledger," Chelsie Corporation has not made any payments on the note since October 28, 2011, and that as of September 5, 2012, Chelsie Corporation owed a principal balance of $200,115.20, interest of $5,008.44, and late fees and costs of $453.99. *Id.* at ¶¶ 2-12; Transaction History (docket no. 24-4 at pp. 15-21); View Ledger (docket no. 24-4 at pp. 22-23).

Ms. Bullock also stated that: the records reflected that Kent Hardin failed to cure the default of Chelsie Corporation under the 1997, 1999 and 2001 Guaranties and that Juli Hardin failed to cure the default of Chelsie Corporation under the 1997 and 1999 Guaranties. Bullock Aff. at at ¶¶ 9-11. Ms. Bullock further stated that Chase has incurred attorneys' fees and legal expenses to enforce the terms of the note. *Id.* at ¶ 13.

### D. Financing statements

Chase has submitted documents related to Uniform Commercial Code (UCC) filings made by Chase and other creditors of Chelsie Corporation. A search report with the Michigan Department of State, UCC Section, reflected three financing statements (Form UCC-1) filed by defendant Chelsie Corporation as debtor. Search Report (docket no. 24-3 at pp. 1-2).

The first Form UCC-1, dated August 29, 2005, named Fifth Third Bank (Western Michigan) as the secured party, and covered the following collateral:

> All assets and all personal property now owned and hereafter acquired. All now owned and hereafter acquired inventory, equipment, fixtures, goods, accounts, chattel paper, documents, instruments, farm products, general intangibles, investment property, deposit accounts, letter of credit rights, payment intangibles, supporting obligations, software, and all rents, issues, profits, products and proceeds thereof, wherever any of the foregoing is located.

*See* Form UCC-1, No. 2005152884-7 (Aug. 29, 2005) (docket no. 24-3 at pp. 2-3). On July 16, 2010, "Fifth Third Bank, an Ohio Corporation" filed a continuation statement (Form UCC-3), No. 2005152884-7. *See* Form UCC-3, No. 2010097382-6 (July 16, 2010) (docket no. 24-3 at p. 4).

The second Form UCC-1, dated July 1, 2008, named Leco Corporation as the secured party, and covered the following collateral:

> All machinery, equipment, fixtures, appliances and furniture now owned or hereafter acquired by Debtor and wherever located. All inventory, materials, and supplies now owned or hereafter acquired wherever located and all products and proceeds thereof. All contract rights, accounts and accounts receivable now or hereafter in existence arising out of Debtors development of a single family residential plat known as Wyndstone Estates in Lincoln Township, Berrien County, Michigan. All substitutes, replacements as accessions, attachments and other additions to any tools, parts and equipment used in connection with any of the above. All general intangibles now owned or hereafter acquired or arising as the result of Debtors development of the plat referred to herein. All cash or non cash proceeds of any of the foregoing including insurance proceeds. All plans, specification, blue prints, data, ledger sheets, files, records, documents and instruments (including but not limited to computer programs, tapes and related electronic data processing

13

software) evidencing an interest in or relating to the development of the plat referred to in above hereof.

*See* Form UCC-1, No. 2008104360-5 (July 1, 2008) (docket no. 24-3 at p. 5).

The third Form UCC-1, dated January 12, 2009, named Chase as the secured party, and covered the following collateral:

> All inventory, Chattel Paper, Accounts, Equipment and General Intangibles; whether any of the foregoing is owned now or acquired later; all accessions, additions, replacements, and substitutions relating to any of the foregoing; all records of any kind relating to any of the foregoing; all proceeds relating to any of the foregoing (including insurance, general intangibles and other accounts proceeds).

*See* Form UCC-1, No. 2009005409-1 (January 12, 2009) (docket no. 24-3 at p. 6).

### E. Lang Affidavit regarding attorney fees

Stephen A. Lang, an attorney with the Alexis Law Group P.C. ("ALG"), executed an affidavit which stated in pertinent part as follows. Mr. Lang has reviewed the billing records of ALG related to the present lawsuit. Lang Aff. at ¶¶ 1-2 (docket no. 24-5). Chase has necessarily incurred attorneys' fees and legal expenses in the amount of $10,652.38 as of September 5, 2012. *Id.* at ¶ 2; ALG Invoices (docket no. 24-5 at pp. 3-15). Lang further stated that the hourly rate of these fees, which ranged from $170.00 to $270.00, "are within the range of the rates found within the Detroit and the Grand Rapids areas." Lang Aff. at ¶ 2.

### IV. Discussion

#### A. Count I (Contract and Guaranties)

Based on the admissions and affidavits in support of its motion for summary judgment, Chase has established: that Chelsie Corporation, Kent Hardin and Juli Hardin executed the Loan Documents at issue in this litigation; that Chelsie Corporation is in default of the Loan Documents; that the default has not been cured; and that Kent Hardin and Juli Hardin are in default

14

of their respective personal guaranties. Under the uncontested terms of their respective guaranties, Kent Hardin and Juli Hardin are jointly and severally liable for Chelsie Corporation's indebtedness to Chase. *See* Guaranties (docket nos. 1-4, 1-5 and 2-1). Ms. Bullock's uncontested affidavit establishes that Chelsie Corporation is in default of the loan documents and that as of September 5, 2012, the Chelsie Corporation owed a principal balance of $200,115.20, interest of $5,008.44, and late fees and costs of $453.99, for a total indebtedness of $205,577.63. Based on this uncontested record, as of September 5, 2012, Chelsie Corporation owed Chase $205,577.63. In addition, Kent Hardin and Juli Hardin are jointly and severally liable for this indebtedness under their respective guaranties. Accordingly, Chase's motion for summary judgment in Count I will be granted against defendants, jointly and severally, for the amount of $205,577.63, which is the indebtedness under the Loan Documents as of September 5, 2012.

### B. Count II (possession of the collateral)

Chase contends that as a result of Chelsie Corporation's admitted default, and under the terms of the security agreement, it has the right to take possession of the collateral with or demand as well as the right to sell and dispose of it. The Security Agreement provides in pertinent part that:

> If the Debtor or the Borrower fails to pay any of the Liabilities when due, or if a default by anyone occurs under the terms of any agreement related to the any of the Liabilities . . . then the Bank shall have the rights and remedies provided by law or this agreement, including but not limited to the right to require the Debtor to assemble the Collateral and make it available to the Bank at a place to be designated by the Bank which is reasonably convenient to both parties, the right to take possession of the Collateral with or without demand and with or without process of law, and the right to sell and dispose of it and distribute the proceeds according to law.

Security Agreement at p. 2 (Default/Remedies) (docket no. 2-2).

Chase has requested that the court take possession of the collateral subject to the Security Agreement and order a sale of the collateral by the United States Marshals Service. Chase, however, does not cite any authority in support of its request for a court ordered sale, does not identify the particular collateral at issue, and does not address other entities which appear to have security interests in the collateral which may be superior to Chase. In this regard, Chase does not address the statute related to judicial sale of personal property, 28 U.S.C. § 2004 ("Sale of personalty generally"), which provides in pertinent part that, "Any personalty sold under any order or decree of any court of the United States shall be sold in accordance with section 2001 of this title [28 U.S.C. § 2001], unless the court orders otherwise," or 28 U.S.C. § 2001, which provides procedures for a public or private sale (e.g., place of sale, terms of sale, appointment of appraisers for private sale, notice, etc.). Rather, the relief sought by plaintiff, i.e., a sale by the United States Marshals Service, appears to be more in the nature of a sale pursuant to a writ of execution as authorized under Fed. R. Civ. P. 69. *See generally, Deutsche Bank National Trust Company v. Ball*, No. 10-cv-872, 2012 WL 1574694 at *1 (S.D. Ill. May 3, 2012) ("A judicial sale, as opposed to a writ of execution, is a sale under the auspices of the Court, conducted at the direction of the Court, in accordance with the procedures set forth in 28 U.S.C. §§ 2001–2007. The primary distinguishing feature of a judicial sale is that the sale must be confirmed by the court. Although the United States Marshals Service has traditionally carried out judicial sales, the sale itself is a ministerial task.") (citations omitted). Based on the present court record, a mixed question of law and fact exists as to whether the court can order a judicial sale under 28 U.S.C. § 2004. Accordingly, Chase's motion for summary judgment as to Count II will be denied.

### C. The Attorneys' fees and costs

Chase seeks $10,652.38 as fees and costs related to this matter as allowed by the Loan Documents, which provide that Chelsie Corporation agreed to pay reasonable attorneys' fees and court costs incurred in collection of the loan and that Kent Hardin and Juli Hardin guaranteed to pay Chelsie Corporation's obligations including reasonable attorneys' fees. *See* docket nos. 1-2 (Credit Authorization Agreement) (p. 6 ¶ 11.2), 1-3 (Contract) (p. 2), 1-4 (Continuing Guaranty 1997), 1-5 (Continuing Guaranty 1999), and 2-1 (Continuing Guaranty 2001). In addition, the respective documents expressly state that they are governed by Michigan law. *See* docket nos. 1-2 (Credit Authorization Agreement) (p. 6 at ¶ 12.5); no. 1-3 (Contract) (p. 2); 1-4 (Continuing Guaranty 1997) (p. 2); 1-5 (Continuing Guaranty 1999) (p.3), and 2-1 (Continuing Guaranty 2001) (p. 3).

"Under Michigan law, parties to a contract may agree that the breaching party must pay the reasonable attorneys' fees of the other side." *Advanced Accessory Systems, LLC v. Gibbs*, 71 Fed.Appx. 454, 464 (6th Cir. 2003), citing *Zeeland Farm Services, Inc. v. JBL Enterprises, Inc.*, 219 Mich.App. 190, 555 N.W.2d 733 (1996). "The factors a court applying Michigan law should consider when examining the reasonableness of attorneys' fees include (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly; (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer; (3) the fee customarily charged in the locality for similar legal services; (4) the amount involved and the results obtained; (5) the time limitations imposed by the client or by the circumstances; (6) the nature and length of the professional relationship with the client; (7) the experience, reputation, and ability of the lawyer

17

or lawyers performing the services; and (8) whether the fee is fixed or contingent." *Id.*, citing *Zeeland Farm Services, Inc.*, 219 Mich. App. at 198 n. 3.

Chase has submitted an affidavit and billing records which reflect that it incurred attorney fees in the amount of $9,970.88 and expenses in the amount of $681.50 for total fees and expenses of $10,652.38. Attorney Lang's affidavit established that Chase's attorneys spent 38.50 hours on this matter, charging an hourly rate ranging from $125.66 to $265.85. In reviewing the relevant factors as set forth in *Zeeland Farm Services*, the court finds: that the time spent is reasonable for the services provided; the rates charged are within the customary rates for work performed in the federal courts in this district; and that the amount of the fee is reasonable given the results obtained.[4] Notably, defendants did not object to the attorneys' fees and expenses. Based on this record, the court finds that Chase is entitled to summary judgment with respect to its requested attorneys' fees and expenses as provided by the Loan Documents. Accordingly, Chase's motion for summary judgment seeking attorneys' fees and expenses under the Loan Documents will be granted in the amount of $10,652.38.

### V. Conclusion

Accordingly, Chase's motion for summary judgment (docket no. 24) will be **GRANTED** as to Count I in the amount of **$205,577.63**; Chase's motion for summary judgment (docket no. 24) will be **DENIED** without prejudice as to the request for a judicial sale as alleged in

---

[4] The record does not provide evidence with respect to the other *Zeeland Farm Services* factors.

Count II; and Chase's request for attorneys' fees in the amount of **$9,970.88** and expenses in the amount of **$681.50** will be **GRANTED**. An order consistent with this opinion shall be issued forthwith.

Dated: June 11, 2013   /s/ Hugh W. Brenneman, Jr.
HUGH W. BRENNEMAN, JR.
United States Magistrate Judge